IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN E. KERCH, | ) | Case No. 3:20-cv-108 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Plaintiff Susan E. Kerch ("Kerch") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the Court will **AFFIRM** the Commissioner's decision.

## I.    Procedural History

On August 1, 2016, Kerch protectively filed a Title II application for a period of disability and DIB. (Tr. 17). Kerch also protectively filed a Title XVI application for SSI on August 16, 2016. (*Id.*). Kerch alleged disability beginning on March 11, 2016, in both applications. (*Id.*). Both claims were initially denied on November 15, 2016. (*Id.*). Kerch then filed a written request for a hearing on December 12, 2016. (*Id.*). A hearing was held before Administrative Law Judge ("ALJ") Nelisbeth Ball on June 12, 2018 in Johnstown, Pennsylvania. (*Id.*). The ALJ issued a decision on February 6, 2019, denying Kerch's claims. (Tr. 17-28). Thereafter, Kerch requested review of the unfavorable decision by the Appeals Council. (Tr. 178-81). The Appeals Council denied Kerch's

request on April 14, 2020. (Tr. 1-5). Kerch has now appealed to this Court, where the parties' motions for summary judgment are pending. (ECF Nos. 13, 15).

## II.   Issues Presented

Kerch presents the following issues for review:

1.  [Whether] [t]he ALJ erred in formulating the [residual functional capacity ("RFC")] without considering all the relevant, probative evidence, including the uncontradicted treating and examining psychological opinion evidence, as required by Agency authority and Third Circuit precedent. (ECF No. 14 at 1).

## III.   Discussion

### a.   Standard of Review

This Court's review is limited to a determination of whether the Commissioner's Decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014). "The Commissioner's findings of fact are binding if they are supported by substantial evidence." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). Substantial evidence "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. Nat'l Labor Rels. Bd.*, 305 U.S. 197, 229 (1938)). Substantial evidence "is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" *Zirnsak*, 777 F.3d at 610 (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). The Court "review[s] the record as a whole to determine whether substantial evidence supports a factual finding." *Id.* (quoting *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v.*

*Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Finally, the Court "review[s] the ALJ's application of the law de novo." *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007).

**b. Evaluation Process**

The ALJ evaluates disability claims according to a sequential five-step process. 20 C.F.R. § 404.1520(a)(4). "First, the Commissioner considers whether the claimant is 'engaging in substantial gainful activity.'" *Zirnsak*, 777 F.3d at 611 (quoting 20 C.F.R. § 404.1520(a)(4)(i)). If the claimant is engaging in substantial gainful activity, then the claimant is not disabled. *Id.* "Second, the Commissioner considers the severity of the claimant's impairment(s)." *Id.* (quoting 20 C.F.R. § 404.1520(a)(4)(ii)). If at step two "the claimant's impairment(s) are either not severe or do not meet the duration requirement, the claimant is not disabled." *Id.* "Third, the Commissioner considers whether the claimant's impairment(s) meet or equal the requirements of one of the Commissioner's listed impairments." *Id.* (quoting 20 C.F.R. § 404.1520(a)(4)(iii)). If at step three "the claimant's impairment(s) meet [or exceed] the requirements of a listed impairment, then the claimant is disabled." *Id.*

If the claimant's impairments do not meet or exceed a listed impairment "then the inquiry proceeds to the fourth step, where the Commissioner considers whether the claimant can return to her past work." *Id.* In determining whether the claimant can perform past relevant work, the claimant's RFC is assessed. *Id.* "A claimant's RFC measures 'the most [she] can do despite [her] limitations.'" *Id.* (quoting 20 C.F.R. § 404.1545(a)(1)) (alterations in original). In assessing the claimant's RFC, the "Commissioner examines 'all of the relevant medical and other evidence' to make its RFC determination." *Id.* (quoting 20 C.F.R. § 404.1545(a)(3)). If the claimant can perform

past relevant work, then the claimant is found not to be disabled. *Id.* The claimant bears the burden of satisfying the first four steps by a preponderance of the evidence. *Id.*

At step five, "the Commissioner bears the burden of establishing the existence of other available work that the claimant is capable of performing." *Id.* at 612 (citing 20 C.F.R. § 404.1520(a)(4)(v)); *Kangas v. Bowen,* 823 F.2d 775, 777 (3d Cir. 1987)). To meet this burden, "the Commissioner must produce evidence that establishes that 'work exists in significant numbers in the national economy that [the claimant] can do.'" *Id.* (quoting 20 C.F.R. § 404.1560). The Commissioner uses the RFC, as well the testimony of vocational experts and specialists, to establish that work exists in significant numbers in the national economy that the claimant can perform. *Id.* "[E]ntitlement to benefits is dependent upon finding the claimant is incapable of performing work in the national economy." *Id.* (internal quotation marks omitted).

### c. The ALJ's Evaluation of Kerch

At step one, the ALJ found that Kerch, despite working after her alleged onset date, did not engage in substantial gainful activity since March 11, 2016. (Tr. 20). At step two, the ALJ found that Kerch had the following severe impairments: "obsessive compulsive disorder ("OCD"); major depressive disorder; unspecified anxiety disorder; bipolar disorder; autistic disorder; and Asperger syndrome." (*Id.*) At step three, the ALJ found that Kerch "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."(*Id.* at 20-22). At step four, the ALJ determined that Kerch "is unable to perform any past relevant work." (Tr. 26). The ALJ also found that Kerch has the RFC:

> [T]o perform a full range of work at all exertional levels but with the following non[-]exertional limitations: she can perform simple routine tasks; can work at a consistent pace throughout the workday but not at a production rate pace where each task must be completed within a strict time deadline; can tolerate occasional interaction with coworkers, supervisors and the public; can tolerate occasional changes in the work setting.

(Tr. 22).

Finally, at step five, the ALJ determined that, "[c]onsidering [Kerch's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Kerch] can perform." (Tr. 27). Accordingly, the ALJ found that Kerch has not been under disability from her onset date of March 11, 2016, through the date of the ALJ's decision. (Tr. 28).

### d.  Analysis

Kerch argues that the ALJ failed to properly credit the medical opinions of her treating source medical providers as required by Social Security Administration ("SSA") regulations. (ECF No. 14). As a result of this error, Kerch argues that the ALJ's RFC finding is not supported by substantial evidence and should be remanded for further consideration. The Court will address each argument in turn.

### i.  The ALJ Properly Credited the Medical Opinions of Kerch's Treating Source Medical Providers

#### A.  The Parties' Arguments

Kerch argues that the ALJ failed to properly credit the medical opinions of her treating source medical providers because "the opinions offered by every treating and examining mental health provider established greater limitations than set forth in the RFC."(ECF No. 14 at 8). Specifically, Kerch argues that the ALJ failed to properly credit the medical opinions of her

treating source medical providers because the ALJ's RFC finding did not include the following treating source medical opinion limitations: (1) treating psychologist Frank K. Schmidt, Ph.D., FACP, FAFP ("Dr. Schmidt") and treating therapist, Kelly Marron's, L.C.S.W. ("Ms. Marron") opinion that Kerch has "'marked' to 'no useful ability' to work in coordination with or proximity to others without being unduly distracted by them for an entire 8[-]hour day," (2) treating psychiatrist Joshua Watt, Psy.D. ("Dr. Watt"), Dr. Schmidt, and Ms. Marron's opinion that Kerch has "'markedly limited' to 'no useful ability' to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," and (3) Dr. Schmidt and Ms. Marron's opinion that Kerch has "'marked' to 'no useful ability' to accept instructions and respond appropriately to supervisors due to psychological symptoms for an entire 8[-]hour day." (*Id.* at 8-9). Moreover, Kerch argues that had the ALJ credited these treating source medical opinions consistent with SSA regulations, and included their limitation findings in her RFC determination, then Vocational Expert ("VE") testimony elicited by the ALJ would have demonstrated that Kerch had met her burden to provide evidence that she is "disabled" as defined under SSA regulations. (*Id.*).

Additionally, Kerch argues that the ALJ failed to give good, specific, or supported reasons for rejecting the medical opinions of her treating source medical providers. (EFC No. 14 at 10). Rather, Kerch argues that the ALJ failed to acknowledge or discuss the consistency between the treating source medical opinions and the medical evidence of record—opting instead to substitute her own lay opinion for that of the medical opinion evidence provided. (*Id.* at 8-24).

In response, the Commissioner argues that substantial evidence supports that ALJ's evaluation on Kerch's treating source medical opinions, non-treating medical opinions, and the objective medical evidence of record. (ECF No. 16 at 11). Specifically, the Commissioner argues that the ALJ's evaluation of Kerch's treating source medical opinions is supported by substantial evidence because the ALJ reviewed the medical opinion of each treating source medical provider, compared those opinions to each other and to the objective medical evidence of record, and concluded that the treating source medical opinions should be assigned "little weight" or "some weight" in formulating Kerch's RFC. (*Id.* at 11-19). Additionally, the Commissioner argues that substantial evidence supports ALJ's evaluation of non-examining State Agency Psychological Consultant, Timothy Ostrich, Psy.D. ("Dr. Ostrich") because Dr. Ostrich's opinion was consistent with the objective medical evidence of record, which indicated that Kerch demonstrated "overall normal mental functioning." (*Id.* at 17). Lastly, the Commissioner argues that substantial evidence supports the ALJ's evaluation of the objective medical evidence of record because the ALJ "evaluated treatment notes, mental status examination findings, and the opinion evidence of record in considering [Kerch's] claims [for DIB and SSI]." (*Id.* 19). Therefore, the Commissioner argues that this Court should affirm the Commissioner's decision. (ECF No. 16).

**B. Legal Standard**

Claims filed on or after March 27, 2017, are subject to new Social Security regulations regarding the evaluation of medical opinions and administrative medical findings. 20 C.F.R. § 404.1520c. The new standard eliminates the treating source rule which required the ALJ to give more weight to medical opinions from treating sources. *Compare* 20 C.F.R. § 404.1527(c)(2) *with* 20

C.F.R. § 404.1520c(a). However, since this claim was filed prior to March 27, 2017, the applicable standard is the treating source rule. 20 C.F.R. § 404.1527.

"[I]f a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight, i.e., it must be adopted." *Welsh v. Commissioner Social Security*, 662 F. App'x 105, 108 (3d Cir. 2016) (internal citations omitted). However, while the opinion of a medical source is entitled controlling weight, if "the treating physician's opinion conflicts with other medical evidence, then the ALJ is free to give that opinion less than controlling weight or even reject it, so long as the ALJ clearly explains her reasons and makes a clear record." *Salles v. Commissioner of Social Security*, 229 F. App'x 140, 148 (3d. Cir. 2007). Moreover, when "the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F. 3d 310, 317 (3d Cir. 2000) (internal citations omitted). "Although an administrative law judge (ALJ) is not required to cite every piece of evidence in the record, the ALJ must adequately explain her reasons for rejecting a treating physician's opinion." *Sanborn v. Commissioner of Social Security*, 613 F. App'x 171, 174 (3d Cir. 2015).

### C. The ALJ's Findings

In considering the treating source medical assessment of Ms. Marron, the ALJ noted that Kerch generally attended weekly therapy sessions with Ms. Marron. (Tr. 25). In her medical assessment, Ms. Marron opined that Kerch has "moderate limitations in her activities of daily living; has extreme limitations in social interaction and concentration persistence or pace; would have continual episodes of decompensation in a work setting; and would be absent from work

more than three days per month." (*Id.*). Moreover, Ms. Marron opined that Kerch had demonstrated a Global Assessment of Functioning ("GAF") score of no higher than 50 in the past year. (*Id.*). Notwithstanding Ms. Marron's treating relationship with Kerch, the ALJ gave Ms. Marron's medical opinion "little weight" because the GAF score given by Ms. Marron was five to ten points lower than any other assessment in the medical record. (*Id.*). Further, the ALJ found that Ms. Marron's opinion of "extreme limitation in social interaction" was inconsistent with and unsupported by mental status exams where Kerch "generally showed normal thought processes, attention, insight and judgment with no obsession, compulsion or agitation." (*Id.*).

Considering the medical opinion of Dr. Schmidt, the ALJ noted Dr. Schmidt's opinion that Kerch has "mostly marked limitations in understanding and memory; and moderate to marked limitations in sustained concentration and persistence, social interaction, and adaptation." (*Id.*). Nevertheless, the ALJ found that, "despite his treating relationship with [Kerch], Dr. Schmidt's assessment of [Kerch] is inconsistent with her activities of daily life and continued work as a freelance writer." (*Id.*). Therefore, the ALJ gave his medical opinion "little weight" because his findings were not consistent with mental status exams which showed "normal thought processes, attention, insight and judgment with no obsession, compulsion or agitation." (*Id.*).

With respect to the medical opinion of Dr. Watt, the ALJ noted Dr. Watt's medical opinion stated that Kerch had "moderate limitation in sustained concentration, social interaction, and adaptation; and marked limitations in completing a normal workweek and interacting appropriately with the public." (*Id.*). The ALJ also noted that Dr. Watt's opinion stated that Kerch had "marked limitations caused by her mental impairments," which the ALJ found was inconsistent with Kerch's acknowledged ability to maintain many activities of daily life. (*Id.*).

Moreover, the ALJ found that Dr. Watt's proposed marked limitations were unsupported by Kerch's mental status exams because the mental status exams generally showed she has "normal thought processes, attention, insight and judgment with no obsession, compulsion or agitation." (Tr. 26). Therefore, the ALJ gave Dr. Watt's opinion "some weight" in determining Kerch could perform "simple, routine tasks" because the mental status exams supported Dr. Watt's opinion that Kerch is "not significantly limited in the area of understanding and remembering." (*Id.*).

Finally, in considering the medical opinion of Dr. Ostrich, the ALJ noted that Dr. Ostrich found that Kerch had no more than "moderate limitations caused by her mental impairments." (Tr. 24). Dr. Ostrich also opined that Kerch could "understand, retain and follow simple job instructions; work at a consistent pace and maintain regular, punctual attendance; ask simple questions and accept instruction; and sustain an ordinary routine without special supervision; and function in production oriented jobs requiring little independent decision making." (*Id.*). The ALJ found Dr. Ostrich's opinion to be generally consistent with and supported by the medical evidence of record which showed continued symptoms, but overall normal mental functioning. (*Id.*). Given the foregoing, the ALJ gave Dr. Ostrich's medical opinion "great weight." (*Id.*). The ALJ also noted that although she gave "great weight" to Dr. Ostrich's medical opinion, she also provided additional limitations she found were "consistent with the evidence received at the hearing level." (*Id.*).

## D.  Analysis

"The ALJ must consider all relevant evidence when determining an individual's residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001). "That evidence includes medical records, observations made during formal medical examinations, descriptions of

limitations by the claimant and others, and observations of the claimant's limitations by others."
*Id.* "Although the ALJ may weigh the credibility of the evidence, [s]he must give some indication
of the evidence which [s]he rejects and h[er] reason(s) for discounting such evidence. In the
absence of such an indication, the reviewing court cannot tell if significant probative evidence
was not credited or simply ignored." *Burnett v. Commissioner of Social Security Administration*, 220
F.3d 112, 121 (citations omitted). Thus, an ALJ's RFC finding must "be accompanied by a clear
and satisfactory explication of the basis on which [his or her RFC determination] rests." *Fargnoli*,
247 F.3d at 41 (3d Cir. 2001) (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)).

With respect to Ms. Marron, the ALJ gave little weight to her opinion because Ms. Marron
gave Kerch a GAF score that was five to ten points lower than any other medical record. (Tr. 25).
Further, the ALJ found that Ms. Marron's opinion of "extreme limitation in social interaction"
was inconsistent with and unsupported by mental status exams where Kerch "generally showed
normal thought processes, attention, insight and judgment with no obsession, compulsion or
agitation." (*Id.*). Kerch argues that the ALJ's use of Ms. Marron's lower GAF score is a red herring
and is not sufficient grounds upon which to give Ms. Marron's opinion less than controlling
weight. (ECF No. 14 at 17-19). Further, Kerch points to several instances in Ms. Marron's (and
other's) treatment notes that demonstrate Kerch has "marked to extreme limitations due to her
mental impairments." (*Id.* at 11-16). Here, the Court finds that the ALJ did not err in giving Ms.
Marron's opinion less than controlling weight because Ms. Marron's medical opinion conflicted
with other medical evidence of record. Indeed, the Court finds that the ALJ adequately explained
her reasons for giving Ms. Marron's medical opinion little weight because (1) Ms. Marron's GAF
score was five to ten point lower than any other assessment in the medical record, and (2) Ms.

Marron's conclusion that Kerch has "extreme" limitations was inconsistent with other medical evidence demonstrating that she generally showed normal thought processes. (Tr. 25). Therefore, the Court finds that the ALJ properly credited the treating source medical opinion of Ms. Marron consistent with SSA regulations.  Moreover, the Court finds that the ALJ's decision to credit Ms. Marron's medical opinion with little weight is supported by substantial evidence.

Concerning Dr. Schmidt, the ALJ gave little weight to his opinion because "despite his treating relationship with [Kerch], Dr. Schmidt's assessment of [Kerch] is inconsistent with her activities of daily life and continued work as a freelance writer." (*Id.*). Additionally, the ALJ gave Dr. Schmidt's medical opinion little weight because Dr. Schmidt's findings of "marked limitations in sustained concentration and persistence, social interactions, and adaptation" were not consistent with mental status exams which showed "normal thought processes, attention, insight and judgment with no obsession, compulsion or agitation." (*Id.*). Kerch argues that the ALJ's reference to her daily activities of exercising and performing household chores, as well as her work as a freelance writer are improper grounds upon which the ALJ relied to give Dr. Schmidt's medical opinion less than controlling weight. (ECF No. 14 at 16-17). Additionally, Kerch directs the Court to several instances throughout her medical records that demonstrate she has "marked to extreme limitations due to her mental impairments" that are consistent with Dr. Schmidt's medical opinion. (*Id.* at 11-16). Here, the Court finds that the ALJ did not err in giving Dr. Schmidt's medical opinion little weight. The ALJ reviewed the medical evidence of record and explained that she was not giving Dr. Schmidt's medical opinion controlling weight because Kerch's activities of daily life, continued work as a freelance writer, and mental status exams showing "normal thought processes, attention, insight and judgment with no obsession,

compulsion or agitation," did not support Dr. Schmidt's medical opinion that Kerch experienced "marked limitations" in numerous areas of work-related functioning. (Tr. 25). Given the foregoing, the Court finds that the ALJ's finding that Dr. Schmidt's medical opinion be given little weight is supported by substantial evidence.

With respect to the medical opinion of Dr. Watt, the ALJ gave his medical opinion "some weight" in determining that Kerch can perform "simple, routine tasks" because Dr. Watt opined that Kerch is "not sufficiently limited in the area of understanding and remembering." (Tr. 26). However, with respect to Dr. Watt's medical opinion that Kerch has "marked limitations in completing a normal workweek and interacting appropriately with the public," the ALJ found his medical opinion was inconsistent with Kerch's ability to maintain activities of daily life. (Tr. 25). Further, the ALJ found that "[t]he marked limitations proposed by Dr. Watt are unsupported by [Kerch's] mental status exams showing normal thought processes, attention, insight and judgment with no obsession, compulsion or agitation." (Tr. 25-26). Similar to the arguments above, Kerch argues that her ability to maintain activities of daily life is not a sufficient basis on which the ALJ can give Dr. Watt's medical opinion some weight and no controlling weight. (ECF No. 14 at 16-17). Additionally, Kerch reiterates various instances throughout the medical record that demonstrate Dr. Watt's medical opinion is consistent with the medical evidence of record. (*Id.* at 11-16). Here, for the same reasons as discussed above, the Court finds that the ALJ properly credited Dr. Watt's medical opinion consistent with SSA regulations. Moreover, the ALJ explained her reasoning for giving Dr. Watt's opinion less than controlling weight. (Tr. 25-26). Therefore, the Court finds that the ALJ did not err in giving Dr. Watt's medical opinion "some weight" and that finding is supported by substantial evidence.

Finally, Kerch argues that the ALJ erred in giving Dr. Ostrich's medical opinion "great weight" because he was a non-examining consultant. (ECF No. 14 at 9). More specifically, Kerch argues that the ALJ erred in giving Dr. Ostrich's medical opinion "great weight" because Dr. Ostrich did not review over 300 pages of additional medical records that were only reviewed by the ALJ (including most treatment notes from Richard Cassone, Psy.D. ("Dr. Cassone"), Ms. Marron, and the medical opinion of Dr. Schmidt). (*Id.* at 19-20). Further, Kerch argues that the opinions of her treating medical providers, Dr. Schmidt and Ms. Marron, should have been given far more weight in the ALJ's RFC determination than the medical opinion of Dr. Ostrich under Third Circuit precedent and SSA regulations. (*Id.*).

Although it is true that "[t]he reports of non-examining physicians are generally given less weight than those of examining and treating physicians," *Nazario v. Commissioner Social Security*, 794 F. App'x 204, 210-11 (3d Cir. 2019), state agent opinions merit significant consideration. *Chandler*, 667 F.3d at 361. Here, after reviewing the record, the ALJ gave "great weight" to the medical opinion of Dr. Ostrich because the ALJ found that his opinion was "generally consistent with and supported by the medical evidence of record." (Tr. 25). Further, although Dr. Ostrich likely did not review Dr. Schmidt's and Ms. Marron's medical opinions prior to giving his medical opinion, the ALJ reviewed these opinions and gave them both "little weight" because she found both opinions were inconsistent and unsupported by Kerch's mental exams.[1] (*Id.*). Further, the ALJ also reviewed the medical records that were not available to Dr. Ostrich when he gave his medical opinion in November 2016 and found that the medical opinions

---

[1] The Court notes that Dr. Watt's medical opinion was given on August 24, 2016, approximately three months before Dr. Ostrich rendered his medical opinion in November 2016. (*See* Tr.81-104; 470-474).

of Dr. Schmidt, Dr. Watt, and Ms. Marron were inconsistent with the record evidence before her. (Tr. 24-26). Given the foregoing, the Court finds that the ALJ properly credited the medical opinion of Dr. Ostrich and found that his opinion was consistent with the medical record before her. Therefore, the Court finds that the ALJ's decision to give "great weight" to Dr. Ostrich's medical opinion is supported by substantial evidence.

The Court notes that, for the most part, Kerch has asked the Court to reweigh the evidence presented to the ALJ and find that the ALJ erred in failing to properly credit the medical opinions of her treating source medical providers over the opinion of her non-treating source medical provider. (ECF No. 14). However, Courts are not permitted to re-weigh the evidence or impose their own factual determinations, *Chandler*, 667 F.3d at 359, even if the Court would have decided the claim differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Therefore, the Court finds that the ALJ did not err in crediting the non-examining medical opinion of Dr. Ostrich over the medical opinions of Kerch's treating source medical providers. Moreover, the Court finds that the respective weights the ALJ gave to Ms. Marron's, Dr. Schmidt's, Dr. Watt's, and Dr. Ostrich's medical opinions are supported by substantial evidence.

### ii. The ALJ's RFC Determination is Supported by Substantial Evidence

Having found that the ALJ's medical opinion evidence credibility determinations are supported by substantial evidence, the Court next turns to whether the ALJ's RFC finding is supported by substantial evidence. For the reasons stated above, the ALJ gave Dr. Watt's medical opinion "some weight" with respect to his finding that Kerch was not significantly limited in the area of understanding and remembering. (Tr. 26). The ALJ accounted for this limitation in her RFC determination by including that Kerch could perform simple, routine tasks. (Tr. 22).

Moreover, the ALJ gave "little weight" to Dr. Schmidt's and Ms. Marron's medical opinions because she found them inconsistent with the record evidence before her. (Tr. 25). Therefore, the ALJ did not include the marked limitations contained in Dr. Schmidt's and Ms. Marron's medical opinions in formulating Kerch's RFC. (Tr. 22). Lastly, the ALJ assigned "great weight" to Dr. Ostrich's non-treating medical opinion that Kerch could "understand, retain and follow simple job instructions; work at a consistent pace and maintain regular punctual attendance; ask simple questions and accept instruction; and sustain an ordinary routine without special supervision; and function in production oriented jobs requiring little independent decision making." (Tr. 24-25). Because Dr. Ostrich's opinion was generally consistent with and supported by the medical evidence of record, the ALJ accounted for Dr. Ostrich's medical opinion in her RFC finding. (Tr. 22).

Given the foregoing, the Court finds that the ALJ's RFC finding is supported by substantial evidence because the ALJ's RFC determination provides that Kerch can perform a full range of work, at all exertional levels, with certain enumerated non-exertional limitations contained therein.  Therefore, the Court will affirm the Commissioner's decision.

### IV.    Conclusion

Under Social Security regulations, a federal district court reviewing the decision of the Commissioner denying benefits has three options: (1) affirm the decision; (2) reverse the decision and award benefits directly to a claimant; or (3) remand the matter to the Commissioner for further consideration. 42 U.S.C. § 405(g). For the above reasons, Plaintiff's Motion for Summary

Judgment is denied to the extent set forth herein, and Defendant's Motion for Summary Judgment is granted.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SUSAN E. KERCH,                          )        Case No. 3:20-cv-108
                                         )
              Plaintiff,                 )        JUDGE KIM R. GIBSON
                                         )
      v.                                 )
                                         )
COMMISSIONER OF SOCIAL                   )
SECURITY,                                )
                                         )
              Defendant.                 )

## ORDER

AND NOW, this 2nd day of June, 2022, upon consideration of Plaintiff's Motion for

Summary Judgment, (ECF No. 13) and Defendant's Motion for Summary Judgment (ECF No. 15),

and for the reasons set forth in the accompanying Memorandum Opinion, **IT IS HEREBY**

**ORDERED** that Plaintiff's motion for summary judgment (ECF No. 13) is **DENIED. IT IS**

**FURTHER ORDERED** that Defendant's motion for summary judgment (ECF No. 15) is

**GRANTED**.

BY THE COURT:

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**